HAZEL LIVINGSTONE, ADMINISTRATRIX (ESTATE OF
WILBUR R. BOWEN) *v.* CITY OF NEW HAVEN.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 7, 1938—decided January 5, 1939.

*Edward S. Snyder,* with whom, on the brief, was *Robert J. Woodruff,* for the appellant (plaintiff).

*Vincent P. Dooley* and *Harold C. Donegan,* for the appellee (defendant).

AVERY, J.  The plaintiff's decedent, Wilbur Bowen, a youth seventeen years of age, while riding on his bicycle in the afternoon of June 22, 1937, with four companions, in a westerly direction on Fournier Street, New Haven, fell on the surface of the street and when picked up was found to have died.  This action was brought by the administratrix of his estate against the city of New Haven to recover damages for his death, which was alleged to have been caused by the failure of the city to maintain the surface of the street in a reasonably safe condition for public travel; and, in a second count, it was claimed that the condition of the surface of the street constituted a nuisance.  The case was tried to the court and judgment rendered for the defendant.  The trial court concluded among other things: (a) that the plaintiff had failed to sustain the burden of proving the allegations to the complaint; (b) that on the date in question Fournier Street was in a reasonably safe condition for public travel and that the defendant had not failed in its duty to so maintain it; and (c) that the defendant did not create and maintain a nuisance.

In her appeal the plaintiff claims that the subordinate facts found by the trial court do not sustain these conclusions and also that error was committed in certain rulings upon evidence.  The plaintiff asked for numerous additions to the finding but as the evidence is not made part of the record we must accept the finding as made by the trial court.  *State* v. *Jones,* 124 Conn. 664, 665, 2 Atl. (2d) 374.  At the point in ques-

tion, Fournier Street runs in an easterly and westerly direction through Beaver Pond Park, its surface is a hard pavement and at its lowest point about half way between Willis and Crescent Streets an excavation twenty feet in width extending across the street had been made and a culvert constructed during the months of February, March and April, 1937. The culvert was covered with a concrete deck which came within two inches of the grade of the surface of the pavement. This was filled temporarily with soil and sand and allowed to settle. Because of the marshy condition of the land adjacent to the culvert it was good engineering practice to allow a reasonable period of time, four months, to intervene before the hard permanent pavement was installed over the refilled area. The roadway was regularly patrolled by police officers in police cars or motorcycles, daily inspections of the progress and manner of work pertaining to the installation of the culvert and of the surface of the filled-in area were made by the superintendent of streets of New Haven, and none of the companions of the deceased fell while riding over the filled-in area. The deceased was riding on a bicycle in a westerly direction and the fill upon the highway was visible at a distance of three to four hundred feet. It was daylight and the deceased was racing down a 3 to 4 per cent. grade as he approached the fill. When he fell he had gone beyond the filled-in area and was lying upon the roadway about a bicycle length to the west of the filled area when first observed by his companions, and, when picked up, there was an abrasion on the left side of his head which commenced about an inch or an inch and one-half from the left eye and extended up and toward the back of the head measuring about two and one-half inches long and about two inches wide. There was no injury to the decedent sufficient in itself to cause death. Previously

the deceased had been treated for a cardiac condition and was suffering from a heart abnormality. The cause of his death could not be determined.

Upon the facts we have mentioned the trial court could reasonably have reached the conclusions it did. The plaintiff in brief and argument refers to certain photographs which were admitted in evidence, and claims that the doctrine of res ipsa loquitur applies, and that a failure of the defendant to maintain the surface of the street in a reasonably safe condition for public travel must be found as a matter of law. The plaintiff has confused the application of the principle. The doctrine of res ipsa loquitur permits, but does not require, the trier to infer negligence, in a certain type of case, from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. *Ryan* v. *Lilley Co.*, 121 Conn. 26, 30, 183 Atl. 2; *Motiejaitis* v. *Johnson*, 117 Conn. 631, 635, 169 Atl. 606. The conditions requisite for the application of the doctrine are stated in *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 26, 96 Atl. 171. In those cases where the doctrine may be applied, it has no further effect than to permit an inference of negligence to be drawn. It has no evidential force, does not shift the burden of proof, and does not give rise to a presumption. *Ruerat* v. *Stevens*, 113 Conn. 333, 337, 155 Atl. 219; *O'Dea* v. *Amodeo*, 118 Conn. 58, 62, 170 Atl. 486; *Gorfain* v. *Gorfain*, 118 Conn. 484, 486, 172 Atl. 924. In the case before us the doctrine did not require the trial court to find from the pictures that the highway was defective, much less to find therefrom that the defendant, with notice of the condition of the highway, had failed to discharge the duty imposed upon it by law to maintain the highway in a reasonably safe condition for public travel.

At the trial Dr. Scarbrough was called by the plain-

tiff as a witness and testified that he found nothing in his investigation of the case or the past history of the plaintiff's decedent indicating that the latter was suffering from any serious illness or ailment and that the deceased had a fall and struck on his head, which set up some reflex process in the body causing sudden death. On cross-examination the doctor was asked if his opinion would be influenced as to the cause of death, assuming that a physical examination of the deceased by a doctor in January, 1933, disclosed enlargement of the heart with a systolic murmur. Later Dr. Scarbrough was asked, assuming that in 1933 the decedent's physical exercise, because of the condition discovered at that time, was restricted, and he was referred to private physicians for care and treatment and then continued to engage in the regular daily sports of a boy of his age, whether those activities would tend to increase a heart condition that was there at the time. Both of these questions were admitted by the court over the objection and exception of plaintiff's counsel who claimed that they were inadmissible, in that facts were assumed which were not in evidence. While the rule is recognized in this state that upon the direct examination of an expert the hypothetical question is to be based upon facts in evidence, *Barbers Appeal*, 63 Conn. 393, 409, 27 Atl. 973, *Porter* v. *Ritch*, 70 Conn. 235, 262, 39 Atl. 169, *Gruskay* v. *Simenauskas*, 107 Conn. 380, 384, 140 Atl. 724, on the cross-examination of an expert witness a greater latitude may be permitted. A fact germane to the inquiry, whether testified to or not, may, in the sound discretion of the court, be used for testing the expert. "Upon cross-examination, any fact which, in the sound discretion of the court, is pertinent to the inquiry, whether testified to by any one or not, may be assumed in a hypothetical question, with the view of testing the skill, learning or

accuracy of the expert, or to ascertain the reasonableness or expose the unreasonableness of [his] opinion." *West Chicago St. Ry. Co.* v. *Fishman,* 169 Ill. 196, 200, 48 N. E. 447; *Bonderson* v. *Hovde,* 150 Minn. 175, 177, 184 N. W. 853; *Taylor* v. *Starr Coal Co.,* 110 Iowa 40, 45, 181 N. W. 249; 3 *Chamberlayne, Evidence,* § 2479; 1 Wigmore, Evidence (2d Ed.) § 684 and note. The trial court did not abuse its discretion in permitting the questions to be propounded to Dr. Scarbrough. Moreover, it appears from his answers that the plaintiff could not have been harmed, as the doctor stated that his opinion as to the cause of death was based wholly upon the facts disclosed by autopsy and would not be affected by the facts assumed in either of the questions.

The plaintiff offered several photographs of the place. Two of these were rejected by the trial court because they showed a plank laid across the roadway at the point where the macadam joined the part which had been filled. Admittedly this plank was not on the road when the plaintiff's decedent fell. The rejection of these photographs was in the discretion of the trial court. *McGar* v. *Bristol,* 71 Conn. 652, 655, 42 Atl. 1000; *Harris* v. *Ansonia,* 73 Conn. 359, 363, 47 Atl. 672; *Murray* v. *Gagliardi,* 105 Conn. 392, 393, 135 Atl. 293.

The defendant offered in evidence a written statement, signed by three of the companions of the deceased for the purpose of contradicting their testimony. The plaintiff objected on the ground that it was improbable that a statement of three alleged eyewitnesses would be identical and that it was apparent that the writing signed by the three was drawn by some third party and could not have been the statement of each of them and that all three were minors. This objec-

tion went to the weight and not to the admissibility of the statement.

There is no error.

In this opinion the other judges concurred.