JOSEPH NAVECKAS *vs.* GABRIEL JACK.

Third Judicial District, Bridgeport, October Term, 1930.
MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 28th—decided December 12th, 1930.

*Frank W. Daley* and *Stanley Dunn,* for the appellant (plaintiff).

*Lawrence A. Howard* and *Cyril Coleman,* with whom, on the brief, was *Julius G. Day, Jr.,* for the appellee (defendant).

HINMAN, J. The plaintiff introduced evidence that in July, 1927, he consulted the defendant, a physician and surgeon, for relief from inability to breathe through his left nostril; he was, otherwise, in good health and condition; the defendant advised an operation on the nose and for the removal of part of a tonsil and, later in the same month, performed an operation upon him. In the fall of 1928, being unable to breathe through his nose, he again consulted the defendant, who then performed a minor operation, using a local anæsthetic, for enlarging the opening between the nose and the throat, and in October of the same year took him to another surgeon who removed a spur or ridge of bone from the septum of his nose. The defendant testified that when he examined the plaintiff his tonsils were diseased, the uvula or palate was swollen and pendulous so that the tip touched the tongue, and the nose and back of the throat were inflamed; he removed the tonsils using the Braun method, and cut off about two-thirds of the uvula; also removed a small fatty tumor from the shoulder, but performed no operation on the nose.

It appeared, from the medical evidence, to be substantially undisputed that, in the fall of 1928, and at the time of the trial, both tonsils were absent and the tonsil area taken up with scar tissue, the uvula or palate was absent, and there were adhesions or joining together of the soft palate and the entire back wall of the pharynx, the breathing space from the nose to

the throat, normally about an inch by an inch and a half in size, being contracted to about the size of a lead pencil. There was a chronic inflammation of the nose and throat and the larynx showed redness and thickening around the vocal cords affecting the voice.

The principal conflict of evidence was between the opinions of expert witnesses regarding the cause of these conditions and their significance as to the defendant's care and skill in performing the first operation. The plaintiff called a physician and surgeon who testified in detail as to the conditions and expressed the opinion that they were due to unskillful, extensive and excessive cutting and lacerations of the mucous membrane, including cutting of the uvula unnecessary in the removal of tonsils. Several physicians and surgeons called by the defendant substantially agreed in an opinion that the amount of scar tissue, the adhesions, and the accompanying conditions were attributable to a constitutional tendency, in the plaintiff, to form scar tissue in an abnormal degree, with consequent contractions, and not to negligence or lack of skill in performing the operation.

Called in rebuttal, the plaintiff's expert expressed an opinion that the plaintiff did not have such a tendency to scar tissue, but that the existing formations were a result of injury and traumatism from "a hemorrhage, an accident, or some unskillfulness" in the 1927 operation. The final question of the cross-examination, "There is just about as much chance in your theory that this thing happened in one of those ways as in another, isn't there?" was assented to.

It appears from the statement in directing a verdict for the defendant and in the memorandum on the motion to set aside, that the trial court entertained the view that the original testimony of the plaintiff's expert and his direct examination when recalled, to-

gether with the other evidence favorable to the plaintiff, was such as to require submission to the jury of the issue of the defendant's want of skill or care. This was correct. The requirements of our law as to production of expert evidence in cases of this kind were answered. *Chubb* v. *Holmes,* 111 Conn. 482, 150 Atl. 516; *Slimak* v. *Foster,* 106 Conn. 366, 138 Atl. 153. The jury were not required to accept the opinions of the experts called by the defendant, as opposed to the conclusions of the witness for the plaintiff. *Coddaire* v. *Sibley,* (Mass.) 169 N. E. 797. It could not be said, as a matter of law, that reasonable men were so bound to reach one conclusion, only, that a verdict reflecting such conclusion should be directed. *Sedita* v. *Steinberg,* 105 Conn. 1, 5, 134 Atl. 243; 26 R. C. L. 1075. It was the province of the jury to determine whether proper professional skill or care was exercised. 48 Corpus Juris, 1151, and cases, note 53.

The trial court, however, attributed to the cross-examination of plaintiff's expert, following his testimony in rebuttal, especially his assent to the proposition already quoted, the effect of consigning the plaintiff's case, as to the cause of his condition, into the realm of inadmissible speculation and conjecture. This conclusion evidently was based upon a construction importing that the witness was unable to state whether the result was due to negligent or unskillful conduct of the operation, or to a hemorrhage or accidental cutting not attributable to the defendant's fault. Although answers are given by a witness in cross-examination which are inconsistent with or contradictory to the testimony in chief, this does not, necessarily, work destruction to the effectiveness of opinions expressed in the latter and deprive them of probative force. It is for the jury to consider the evidence of the witness as a whole in passing upon

the weight and effect to be given to the judgments expressed and, unless there be such a conflict or inconsistency of statement as to preclude such action by reasonable men, they may accept and give effect to such opinions. *McMinis* v. *Philadelphia Rapid Transit Co.*, 288 Pa. St. 377, 135 Atl. 722. See also *Lampe* v. *Simpson*, 106 Conn. 356, 138 Atl. 141; *Connelly* v. *Connecticut Co.*, 107 Conn. 236, 140 Atl. 121; *Clark* v. *Torrington*, 79 Conn. 42, 45, 63 Atl. 657.

However, in the present instance, careful reference to and consideration of the entire final cross-examination in the light of the witness' prior testimony relevant thereto tends to dissipate any seeming contradiction and the attributed effect of rendering speculative the cause of the condition. In his original testimony, among the likely causes of the trauma—cutting or laceration—of the membranes to which he attributed the accumulation of scar tissue, the witness had mentioned unskillful attempts to stop a hemorrhage by sewing tissue around it or otherwise, causing excessive laceration or cutting, and, as accounting for the cutting of the uvula, an accidental but unskillful catching thereof in the snare used in the tonsil operation. It fairly appears that in the final cross-examination his reference to hemorrhage and accident was in this sense and connection, and if so would involve no contradiction of his opinion, previously expressed, that whether the trauma occurred in either of these two ways, or by other excessive cutting or laceration, it was unskillful or negligent. As to the probable causes for accumulation of scar tissue, other than cutting or laceration, which he admitted as being recognized by technical authorities, he had stated, earlier, that he regarded these as excluded by the operative facts and the history of the plaintiff. We conclude therefore that the issue of the defendant's exercise of proper care and

skill remained open as a question for the jury and as such should have been submitted to them.

There is error and a new trial is ordered.

In this opinion the other judges concurred.