JOHN F. NIXON, SR., ET AL. *v.* WILLIAM J. GNIAZDOWSKI

BALDWIN, DALY, KING and MURPHY, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued December 5, 1957—decided January 28, 1958

*J. Warren Upson,* with whom, on the brief, were *Francis G. Fitzpatrick* and *Thomas Neary,* for the appellant (defendant).

*Michael V. Blansfield,* with whom, on the brief, was *Harry M. Albert,* for the appellees (plaintiffs).

DALY, J. The plaintiffs brought this action for the recovery of damages and an injunction to restrain the defendant from using his land as a dump, a disposal area and a piggery. The defendant has appealed from a judgment awarding nominal damages to the plaintiffs and enjoining him from using or permitting the use of a portion of his premises for the dumping of waste material and the burning or burying of it.

The defendant asks to have facts as set forth in seven paragraphs of the draft finding added to the

finding. The additions cannot be made. Some of the suggested facts are not material. Others are not admitted or undisputed. A fact is not an admitted or undisputed fact because the witness who testified to it has not been contradicted. The acceptance or rejection of testimony is a matter for the trial court. *Starkel* v. *Edward Balf Co.*, 142 Conn. 336, 337, 114 A.2d 199; *Quiet Automatic Burner Corporation* v. *Wetstone*, 143 Conn. 276, 278, 121 A.2d 635; Practice Book § 397; Maltbie, Conn. App. Proc. § 158. Furthermore, the fact that a witness testifies as an expert does not compel the acceptance of his testimony as true. *Taylor* v. *Corkey*, 142 Conn. 150, 154, 111 A.2d 925; *Clark* v. *Haggard*, 141 Conn. 668, 674, 109 A.2d 358. The defendant's claim that the facts contained in six paragraphs of the finding were found without evidence is futile. These challenged facts are amply justified by the evidence.

The court found the following facts: On June 8, 1949, the defendant and his wife became the owners of a tract of land on the top of Andrew Mountain, one of the range of hills on the southerly side of the borough of Naugatuck. Their land is south of and adjacent to the Andrew Mountain Road. It consists of seventy acres, more or less, and is hereinafter referred to as the defendant's property. The defendant fenced in about thirty acres of the tract and used it for a piggery. At the time he had a contract with the borough of Naugatuck for disposal of its garbage. From June, 1949, up to the present, he has continued to collect garbage in the borough of Naugatuck and has disposed of it by feeding it to pigs kept on his tract. The garbage is dumped in the open fields, where it is eaten by the pigs. In addition to conducting a piggery on the tract, the defendant has, since June, 1949, collected trash from certain parts

of the borough of Naugatuck and dumped it on a portion of his property. He has burned some of it from time to time. This dumping area is adjacent to the fenced-in portion of the farm used as a piggery. Between June, 1949, and June, 1956, some of the plaintiffs acquired land on Andrew Mountain and, during this period, constructed houses facing Andrew Mountain Road. These houses are westerly of, and at approximately the same level as, the defendant's property.

In May, 1956, George Clark, either individually or on behalf of the W. F. Clark Fuel and Trucking Company, Inc., entered into a contract with the footwear division of the United States Rubber Company for the disposal of the paper, rubber, fabrics, chemicals and other waste from its plant in the borough of Naugatuck. Thereafter, Clark contracted with the defendant for the disposal of this material on the portion of the defendant's property which is just south of the piggery. This disposal area is adjacent to one of the areas on which the defendant puts trash and rubbish. On June 11, 1956, Clark commenced dumping waste materials such as rubber trimmings, defective rubbers, rubber boots, rubber-coated canvas, rubberized gas cells for jet planes and cafeteria waste on the disposal area, and since that date he has deposited such material there at the rate of approximately one and a half million pounds per month. For at least four years prior thereto, a substantial part of the waste material from the plant had been taken to two dumping areas on the top of Hunter's Mountain, one of the hills on the southerly side of the town. The material had been burned there. This had caused large columns of black smoke and the smell of burning rubber.

Between June 11, 1956, and July 1, 1956, Clark

caused the dumped material, together with methyl ethyl ketone, to be burned. The area immediately adjacent to the dump was contiguous with large areas covered by brush and trees and was subject to winds and drafts in all directions. The defendant did not maintain a full-time guard or watchman to safeguard the property from intruders, though persons were known to go on the premises without his consent. The fires caused large volumes of flames extending some distance into the sky and topped by black, foul-smelling smoke. The smoke was permeated with a strong odor of burning rubber, mixed with a foul-smelling odor from the methyl ethyl ketone which was burned at the same time. The flames were plainly visible at night. The glare was visible day and night and caused the plaintiffs to be fearful that the burning would get out of hand. The black smoke spread along the face of the slope. It covered the dwelling houses of many of the plaintiffs and required them to close their windows during the day and at night. The flames, smoke and odor rendered the occupants of the plaintiffs' houses physically uncomfortable, induced a feeling of nausea in some instances, and, in a substantial way, impaired the comfort, repose and enjoyment of the homes of the plaintiffs. Since July 1, 1956, there has been no burning of any waste material upon the disposal site except on one occasion, in the fall of 1956, when a small fire was lighted at the site to burn a small accumulation of boxes.

The court viewed the premises in November, 1956. Beginning about July 1, 1956, a large ditch has from time to time been dug with a bulldozer on the portion of the defendant's property used by Clark as a disposal area. Trucks have been backed up to the brink of the ditch and the waste material has been dumped

into it. The ditch, in the shape of an arc, is from 10 to 20 feet in depth and about 200 in length. The waste material exposed in the ditch contains paper boxes and rubber. It is flammable on contact with an open flame. If ignited, it would cause a stubborn and serious fire which could not be controlled owing to the lack of water and fire prevention facilities. From time to time the material dumped into the ditch has been compacted by the use of a bulldozer or by a similar method, and a thin layer of cinders and dirt has been used to cover the material. Nevertheless, there has been a continuous face of exposed waste material. The amount of material disposed of in this way approximates thirty-three loads each week. It consists primarily of cellulose products and rubber scrap, about 60 per cent being cellulose, which disintegrates when wet and will not burn unless it is ignited. The rubber products will stay in their original condition for a fairly long time, gradually disintegrating over a period of approximately twenty years by slow oxidation. The dumped materials are comparatively inert, are not likely to cause spontaneous combustion and, with the exception of the rubber, will disintegrate rapidly. The rubber material can be ignited by an open flame.

The court concluded that the defendant's use of his farm for the raising of pigs, the collection of garbage and the dumping of trash, on the portion of the premises used by him but not by Clark, does not constitute a nuisance. It did conclude, however, that the smoke and odor resulting from the burning of material on the defendant's property has made living in the plaintiffs' houses practically unbearable and caused a serious fire hazard, and it awarded nominal damages to each of the plaintiffs. The court concluded, also, that the dumping of waste materials

and the burning or burying of them in the disposal area used by Clark in the manner described in the finding constitutes a fire hazard and nuisance and should be enjoined. The defendant contends that the court erred in reaching the last two of these conclusions.

Questions of fact were presented for the court's determination. *Jeschor* v. *Guilford,* 143 Conn. 152, 156, 120 A.2d 419. Conclusions are tested by the finding. *Investors Mortgage Co.* v. *Schiott,* 143 Conn. 61, 64, 118 A.2d 897. A nuisance is that which "worketh hurt, inconvenience, or damage." *Hoadley* v. *M. Seward & Son Co.,* 71 Conn. 640, 644, 42 A. 997; *Stowe* v. *Miles,* 39 Conn. 426, 428. If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as a matter of fact. *Capozzi* v. *Waterbury,* 115 Conn. 107, 111, 160 A. 435; *Gonchar* v. *Kelson,* 114 Conn. 262, 271, 158 A. 545; *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 A. 499. The court's conclusions that the smoke and odor resulting from the burning of material on the defendant's property made living in the plaintiffs' houses practically unbearable and caused a serious fire hazard and that a nuisance existed on the portion of the defendant's property used by Clark are amply supported by the facts found. We do not discuss the defendant's contention that zoning regulations were not legally adopted, as other issues, sufficient to sustain the judgment, were correctly decided. Maltbie, Conn. App. Proc. § 340. The defendant's additional claim that at most a regulatory, rather than a prohibitory, injunction should have been issued cannot be sustained on this record. The scope and quantum of injunctive relief rests in the sound discretion of the trier. There is nothing in the

finding which would justify us in holding that the issuance of a prohibitory injunction transcended the limits of that discretion.

There is no error.

In this opinion the other judges concurred.