JOSEPH PISCHITTO *v.* ELMORE W. WALDRON

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 1, 1959—decided February 2, 1960

*Milton H. Belinkie,* with whom, on the brief, were *Joseph G. Shapiro* and *John H. Welch, Jr.,* for the appellant (defendant).

*Theodore I. Koskoff,* with whom were *Robert R. Petrucelli* and, on the brief, *Eli H. Millner,* for the appellee (plaintiff).

KING, J.   The defendant claims that the court erroneously denied his motion to set aside the verdict as against the evidence.  The jury might have found the following facts:   Route 7, in Danbury, runs generally north and south, and at the locus of the accident consists of a concrete traveled portion twenty feet wide and asphalt shoulders each eight feet wide.  About 8:30 in the evening of April 30, 1957, the plaintiff was operating his two-door Pontiac car southerly along route 7, intending to visit an ice-cream stand which was situated westerly of the highway and reached by two driveways separated by a grassy island located at the edge of the westerly shoulder of the highway and directly in front of the ice-cream stand.  The plaintiff applied his directional signal and made a rotary motion with his left arm extended, to indicate his intention of turning right into the more northerly driveway.

Seeing that it was blocked by parked cars, he drove
his car astride the westerly edge of the concrete
portion of the highway to the southerly driveway.
He continued to give the mechanical and manual
directional signals. As the plaintiff was about to
reach the southerly driveway, the defendant's truck,
approaching from the south, collided with the plain-
tiff's car, causing the plaintiff's left arm to be
severed about eight inches below the shoulder. The
impact between the two vehicles was slight, resulting
in a dent in the area of the left front headlight of
the plaintiff's car, a scrape mark along the left front
fender, a dent on the front edge of the left door, and
the breaking off of the doorhandle. The damage to
the truck was even less. A tubular metal step near
the rear of the left side was bent, as was the left
side of the rear bumper. The glass in the left win-
dow of the plaintiff's car, back of the door, was
smashed, and streaks of blood ran down the door
panel.

The defendant claims that the physical facts pre-
clude the acceptance of the plaintiff's version of the
collision. This claim is without merit. The most
that could be claimed was that the plaintiff was mis-
taken in estimating that the defendant's truck was
only thirty feet away when it came over on his side
of the road. This was not an exact measurement.
The jury were entitled to find, as they obviously did,
that the defendant's truck grazed the plaintiff's car,
knocking his extended left arm back against the win-
dow of his car with such force as to shatter the glass
and shear off the arm, which was found on the west
shoulder of the road a little south of the island in
front of the ice-cream stand. The plaintiff brought
his car to a stop 231 feet south of the island. A
trail of blood extended along the middle of the

west lane of the highway from where the car came to rest to a point some forty feet to the north. All this is corroborative of the plaintiff's claim that the collision occurred when the defendant's truck was on the plaintiff's side of the road.

The defendant also claims error in the denial of his motion to set aside, as excessive, the verdict of $90,000. The facts in this case were unusual in several respects. The plaintiff was a common laborer who had left school at the fourth grade and whose IQ is estimated to be 90. For the three years preceding the injury he had earned between $4000 and $4500 a year, and at the time of the accident he was receiving $93 a week. He was about forty-four years old at the time of trial and had an expectancy of about twenty-eight years. His opportunities for learning any other work are circumscribed by the paucity of his educational and mental attainments, and his usefulness as a laborer is seriously impaired by the loss of the arm. His pain and suffering were not inconsiderable and are not wholly at an end. The period of hospitalization was comparatively short, and the aggregate of the medical, surgical and hospital expenses was relatively low. However, expenses for replacement of prosthesis will recur as long as the plaintiff lives. The jury might reasonably have found that the plaintiff's past and future expenses for medical care, treatment and appliances would total over $8000. Nothing appears to have occurred during the trial to inflame the jury or prejudice them against the defendant.

The court's memorandum of decision contains a clear and painstaking analysis of the evidence bearing on the issue of damages. It is apparent that the rather unusual factual situation involved in this issue was carefully considered in the light of our

rule. But for this, we might feel impelled to hold that the verdict, which was obviously liberal, was legally excessive. What we said in *Butler* v. *Steck,* 146 Conn. 114, 118, 148 A.2d 246, may be adapted to the present case as follows: "The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury mistook the law or were influenced by partiality, prejudice, mistake or corruption. *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555, and cases cited; *Mulcahy* v. *Larson,* 130 Conn. 112, 114, 32 A.2d 161; Maltbie, Conn. App. Proc., § 197. This test must be applied in the first instance by the trial court. On appeal, we are reviewing primarily the action of the trial court. *Joanis* v. *Engstrom,* 135 Conn. 248, 251, 63 A.2d 151; Maltbie, op. cit., §§ 187, 196, 197. We determine upon the evidence whether the trial court, in exercising a large discretion, could legally act as it did, not whether we, upon the same evidence, would take the same action. From the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, upon the printed record, what factors, if any, could have improperly influenced the jury. *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216; *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895; *Loomis* v. *Perkins,* 70 Conn. 444, 447, 39 A. 797. The memorandum of decision shows the firm conviction of the trial court that the verdict was . . . [not excessive] and that it was reached by considerations . . . properly applicable in the awarding of damages. . . . The evidence does not demonstrate the clear abuse of discretion which would warrant a reversal of the action of the trial

court in . . . [refusing to set] aside the verdict."

A final claim of error is addressed to the charge. In that portion of its charge relating to expert testimony, the court, after explaining a hypothetical question and giving the test for the credibility of an expert witness, stated, in effect, that the value or weight of the expert's opinion also depended upon the truth and completeness of the facts he is asked to assume as the basis of his opinion, and that if any facts were included which the jury did not find proven or if any material facts were omitted, the value of the opinion might be entirely destroyed or seriously affected. The defendant excepted to the latter portion of this charge on the ground that it allowed the jury to determine, as laymen, whether a material fact had been omitted from a hypothetical question in a scientific field, in violation of the rule of *Van Detti* v. *Parsons Bros., Inc.,* 146 Conn. 282, 286, 150 A.2d 200. The finding discloses nothing as to the setting in which the charge was given or as to the expert testimony which had been adduced. A charge is to be tested by the finding, not by the evidence. *State* v. *Tryon,* 145 Conn. 304, 307, 142 A.2d 54. If we were to give consideration to the statements in the brief and oral argument of the defendant, it would appear that he had made use of hypothetical questions in examining a physicist who was called by him and who had given an opinion that the collision could not have occurred in the manner claimed by the plaintiff. This was similar to the testimony offered in *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 664, 136 A.2d 918. In the absence of anything in the finding except the charge as given and the exception as taken, we can consider the instruction complained of only in its general aspects. We assume that the ex-

amination and cross-examination of any expert witness conformed to our rules, since no error is claimed in this respect.

Cross-examination of an expert, or the testimony of other experts, often brings out the effect, on the opinion as given in answer to a hypothetical question, which would or should result if one or more of the facts assumed were eliminated or if additional facts were assumed. See *Livingstone* v. *New Haven,* 125 Conn. 123, 127, 3 A.2d 836; *Naveckas* v. *Jack,* 112 Conn. 407, 410, 152 A. 580. Whether such facts are actually to be found proven is then a matter for the determination of the trier if evidence from which they could be found proven has been presented.

It follows that the force of the opinion of the expert will be affected in at least two ways by the jury's finding of the facts assumed in, or those omitted from, a hypothetical question. If, and to the extent that, the opinion of the expert was based on a fact or facts which the jury do not find proven, the opinion is weakened or destroyed, as the case may be, as the jury were told in the present charge. *Van Detti* v. *Parsons Bros., Inc.,* 146 Conn. 282, 286, 150 A.2d 200. And if, and to the extent that, additional facts, not included in the question but which the jury properly finds were proven during the course of the trial, would or should alter the opinion of the expert, then that opinion is to that extent weakened or destroyed, as the case may be. See *Livingstone* v. *New Haven,* supra. This is quite apart from the settled rule that "the fact that a witness testifies as an expert does not compel the acceptance of his testimony as true." *Nixon* v. *Gniazdowski,* 145 Conn. 46, 48, 138 A.2d 796.

The fair meaning of the charge, as the jury must

have understood it, is that the court, in speaking of a material fact which the jury might find lacking in the facts assumed in the hypothetical question, was referring to the second situation, that is, where a fact which they found proven was not included in the facts assumed in the question, although proper evidence, which the jury might credit, had shown that its inclusion would or should affect the opinion of the expert. Such a fact would necessarily be a material fact, as far as the opinion of the expert was concerned. The charge could not reasonably have been misunderstood by the jury or construed as authorizing them, in a specialized field of knowledge where opinion evidence from a lay witness would be inadmissible, to determine, solely on their own lay knowledge, what scientific facts were material or immaterial to the expert's opinion. *Van Detti* v. *Parsons Bros., Inc.*, supra; see also cases such as *McDermott* v. *St. Mary's Hospital Corporation*, 144 Conn. 417, 423, 133 A.2d 608. The exception was not well taken.

There is no error.

In this opinion the other judges concurred.