## STATE OF CONNECTICUT *v.* MARIO DeGENNARO ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, JS.

Argued March 2—decided April 28, 1960

*Charles M. Lyman,* for the appellant (defendant DelVecchio).

*John M. Murphy,* public defender, for the appellant (named defendant).

*Arthur T. Gorman,* assistant state's attorney, with whom, on the brief, was *Abraham S. Ullman,* state's attorney, for the appellee (state).

KING, J. The defendants were first tried together to the jury under a joint information charging common-law burglary of the home of Matthew J. Coyle, in West Haven, in the early evening of August 24, 1958. General Statutes § 53-68. In a second part of the information, the defendant DelVecchio was charged as a third offender and the defendant DeGennaro as a second offender, under the provisions of §§ 54-121 and 54-118 of the General Statutes. The jury failed to agree on a verdict; a mistrial was necessarily ordered and the jury discharged.

Immediately after the entry of the order of mistrial and the discharge of the jury, counsel for each defendant, in the defendants' presence and in open court, requested a new trial the following week. The state's attorney objected on the ground that the

same array of veniremen and the same judge would be the only ones available. Although the state's attorney wished to have any retrial deferred until the next criminal session, when there would necessarily be a different array of veniremen and a different presiding judge, he finally acceded to the demands and urging of the defendants' counsel for an earlier trial. It actually began two months later, during the same criminal session. A month or more before the second trial, counsel for each defendant was advised by the state's attorney that the state intended to nolle the burglary charge and to substitute a charge of conspiracy to commit the crime of theft and that as a result of further information obtained on DeGennaro, he also would be charged as a third offender. Before the second trial, the nolle was entered, the new information was filed, both defendants were rearrested, and both were put to plea on the first or conspiracy part of the information. Each entered a plea of not guilty and claimed trial to the jury. The defendant DeGennaro was represented throughout both trials by the public defender, who died prior to the perfection of this appeal. The defendant DelVecchio was represented by private counsel during the first trial and until after the state's attorney notified counsel of the intended change of charge. The counsel was then allowed to withdraw, and prior to the actual filing of the new information, a special public defender was appointed for DelVecchio. Shortly after the entry of the pleas to the new information, and at the specific request of both defendants through their attorneys, the case proceeded to trial. The judge was the one who had presided at the first trial, but there was a new array of veniremen. A verdict of guilty was returned as to each defendant and a motion to set it aside was

denied. Thereafter, each defendant was separately tried by the court on the third offender charge and found guilty. The defendant DeGennaro, after conviction by the jury but before the trial to the court on the third offender charge, made a motion to quash that charge which was denied.

In this appeal, each defendant assigns error in the court's refusal to set aside the verdict as against the evidence and in the trial of his case before the same judge who had presided at the first trial. The defendant DeGennaro assigns error in the court's denial of his motion to quash the third offender charge and also in that portion of the court's charge to the jury concerning his failure to take the stand.

The motion to quash was based on a claim that the state, having charged DeGennaro as a second offender in the information in the first trial, could not, in the information in the second trial, charge him as a third offender. No complaint is made by either defendant that the state, in charging the prior offenses, failed to follow the proper procedure as set forth in § 54-62 of the General Statutes and Practice Book §§ 340 and 351. See *State* v. *Holloway,* 144 Conn. 295, 301, 130 A.2d 562. It is not surprising that DeGennaro, in his brief, cited no authority which supported his claim. It is without merit. See *State* v. *Holloway,* supra.

The motion to set aside the verdict is based on the claim that while the evidence might have warranted a verdict of guilty of theft, it was insufficient to warrant a verdict of guilty of conspiracy to commit the crime of theft. It is true, as the defendants claim, that under our statute,[1] as well as at common law,

---

[1] "Sec. 54-197. CONSPIRACY. Any person who combines, confederates or agrees with another or others to accomplish any unlawful object by lawful means, or any lawful object by unlawful means, or

there can be no conspiracy unless there is a combination, confederation or agreement of two or more persons. But no formal agreement need be proven, and it is enough if there is a mutual purpose to do the forbidden act, which in this case was to steal from the Coyle home. *State* v. *Gerich,* 138 Conn. 292, 297, 83 A.2d 488, and cases cited. It is unnecessary fully to recite the evidence produced by the state. When the Coyles unexpectedly returned home, they heard noises in the house and went outside to summon the police. DeGennaro ran out of the house, looked at the Coyles and warned them not to move or they would be shot; almost immediately he was joined by DelVecchio, who ordered DeGennaro to shoot the Coyles; both defendants then fled; DelVecchio tripped over a chain fence suspended about fourteen inches above the ground; he dropped, as he fell to the ground, a red-rimmed flashlight apparently identical with one afterwards found in his car; four or five hours later, the defendants were discovered in a restaurant; they had been seen in another restaurant a short time prior to the theft; when they were found after the theft, DeGennaro had on his person a particular $1 bill, so discolored as to be easily identified as one belonging to Coyle's son, and DelVecchio, whose Cadillac was parked nearby, had fresh lacerations on his legs about midway between his feet and his knees. There was much more incriminating evidence, and the jury were amply warranted in concluding that the two defendants were in the Coyle house in furtherance of a mutual purpose to steal. The defendants' claim was that the evidence, at most, warranted nothing more

---

any unlawful object by unlawful means, if one or more of such persons do any act in furtherance of such combine, confederation or agreement, shall be [punished] . . . ."

than a conclusion that by pure coincidence and independently of each other, each defendant happened to enter the Coyle house and steal property therein at the same time, without any mutual plan, purpose or concert of action. The jury were fully justified in rejecting such a strained view of the evidence.

DelVecchio took the stand in his own defense. DeGennaro did not. The court, in its charge, explained the law governing the failure of an accused to take the stand in substantial accordance with our rule as given in cases such as *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193, and *State* v. *DelVecchio,* 145 Conn. 549, 551, 553, 145 A.2d 199. DeGennaro admits that the charge was a correct statement of the law. His claim is that there was no evidence from which the jury could find that the state had made out a prima facie case of conspiracy against him. If this claim were sound, then of course the charge should not have been given. Actually, the claim is not properly before us, since a charge is to be tested by the finding, not by the evidence; *Pischitto* v. *Waldron,* 147 Conn. 171, 176, 158 A.2d 168; and here there is no proper finding by which to test a charge. If we assume that the claim is properly before us, the evidence was more than ample to make out, against both defendants, a prima facie case of conspiracy to commit a theft. *State* v. *Rich,* 129 Conn. 537, 540, 29 A.2d 771. Thus, there was no error in giving the charge.

The final claim of error pressed by the defendants is that the same judge presided at the first and the second trials, contrary to the provisions of § 51-41.[2]

---

[2] The relevant portion of § 51-41 reads as follows: "No judge of any court who presided over any jury trial, either in a civil or criminal case, in which a new trial is granted, shall again preside at the trial of such case."

This statute, in substantially its present form, appeared as chapter 128 of the Public Acts of 1899. We assume, without deciding, (a) that the first trial to the jury, which ended in a disagreement and consequent mistrial, constituted a "trial" within the meaning of § 51-41; see *State* v. *Lee,* 65 Conn. 265, 273, 30 A. 1110; so that it could be said that a "new trial . . . [was] granted"; and (b) that notwithstanding the change of charge from common-law burglary to conspiracy, the case presented at the second trial "practically constituted the same case" as the one presented at the first trial under the rule given in *State* v. *Hartley,* 75 Conn. 104, 109, 52 A. 615. When that case was decided, § 841 of the Revision of 1888 provided that "[w]hen any judge shall be disqualified to act in any proceedings before him, he may act, by consent of the parties, in writing, given thereto in court." In construing the provisions of chapter 128 of the Public Acts of 1899 (now § 51-41), the court in the *Hartley* case held that that chapter, when read in connection with § 841, was a disqualification statute as distinguished from one creating a jurisdictional infirmity which the parties were powerless to remedy by waiver, consent or otherwise; and that if a second trial is had before the same judge in violation of the provisions of that chapter, the judgment is not void, although it is voidable upon appeal seasonably taken. It may be noted in passing that while it is not mentioned in the opinion, chapter 13 of the Public Acts of 1889 (now § 51-42) was in effect at the time of the trial of the *Hartley* case. Chapter 13 provided that if a judge acted in a proceeding in which he was disqualified by statute, the proceeding would not be void but would be voidable on appeal. It remains to determine whether the defendants, in the

present case, effectually consented to the second trial before the same judge.

In the Revision of 1902, § 841 of the Revision of 1888 appears as § 498, with the requirement that the consent be in writing eliminated. The 1902 statute, entitled "Disqualified judge may act by consent," remained substantially unchanged, and as a separate section, through the Revisions of 1918 (§ 5510), 1930 (§ 5395) and 1949 (§ 7694). Although there was no intervening amendment, in the Revision of 1958 this statute was added as the last sentence of § 51-39, which is a statute providing for disqualification of a judge in certain situations involving relationship to the parties or interest in the outcome of the case. The defendants seize upon this rearrangement, made by the revisers, and claim that it limited the application of what was once § 841 of the 1888 Revision to the types of disqualification referred to in the first portion of § 51-39. This claim is without merit. The language remains virtually unchanged[3] and embraces any ground of disqualification, including, of course, that prescribed by what is now § 51-41. *State* v. *Hartley,* supra. Revisers are presumed not to change the law. *Wilson* v. *Miller,* 144 Conn. 212, 216, 128 A.2d 894. Not only did each defendant "consent in open court" to a trial before the same judge; each requested it with earnestness and vigor.

The defendants make the further claim that they could not "waive" the disqualification because waiver is the intentional relinquishment of a known right and it does not affirmatively appear that they or their counsel knew of the disqualification statute (§ 51-41). This claim is apparently taken from sim-

---

[3] The last sentence of § 51-39 reads as follows: "When any judge is disqualified to act in any proceeding before him, he may act if the parties thereto consent in open court."

ilar language in the opinion in *State* v. *Hartley,* supra. Section 51-39, however, refers to consent to have the judge hear the case, not waiver of his disqualification to hear the case. That the defendants went far beyond mere consent is not open to question. Whatever may have been the situation when, as at the time of the trial of *State* v. *Hartley,* the consent statute (Rev. 1888, § 841) required the consent to be given in writing, we cannot engraft onto the present consent statute a requirement of knowledge of the disqualification statute which the language of the consent statute does not impose. See cases such as *Beardsley* v. *Beardsley,* 144 Conn. 725, 729, 137 A.2d 752; *Manchester Realty Co.* v. *Kanehl,* 130 Conn. 552, 555, 36 A.2d 114; *Atlas Realty Corporation* v. *House,* 123 Conn. 94, 100, 192 A. 564. Our construction is in harmony with modern procedural concepts, which regard with disfavor the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, the assignment of such errors as grounds of appeal. Such methods amount to trial by ambuscade of the judge. See cases such as *Towhill* v. *Kane,* 147 Conn. 191, 193, 158 A.2d 251; *Glens Falls Ins. Co.* v. *Somers,* 146 Conn. 708, 712, 156 A.2d 146; *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433, and *D'Andrea* v. *Rende,* 123 Conn. 377, 383, 195 A. 741.

There is no error.

In this opinion the other judges concurred.