MAE NIELSON *v.* DANIEL D'ANGELO
(2409)

HULL, DUPONT and BORDEN, Js.

Argued November 4, 1983—decision released February 7, 1984

*Thomas L. Brayton,* for the appellant (defendant).

*William J. Secor, Jr.,* with whom, on the brief, was *Donald McPartland,* for the appellee (plaintiff).

BORDEN, J. This is a medical malpractice[1] action in which the defendant physician appeals[2] from the judgment of the trial court setting aside a jury verdict for the defendant and ordering a new trial. The following facts essential to the appeal are not disputed. On May 9, 1979, the plaintiff, who was seventy-seven years old, fractured her pelvis and was admitted to the hospital where the defendant, an orthopedic surgeon, undertook her treatment. Because the plaintiff had arteriosclerosis, part of the treatment prescribed by the defendant involved placing elastic stockings on both her legs in order to prevent a pulmonary embolism which could be fatal. The stockings were applied on May 9, 1979, at 6:30 p.m. At various times from then until midnight of May 12 the stockings were removed because of complaints by the plaintiff, and then reapplied. The stocking on the right leg was permanently removed by

---

[1] This action was initially brought against the defendant physician and a hospital. During the trial the plaintiff withdrew her complaint against the hospital.

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

a nurse on May 12 because of the plaintiff's complaint of pain. On May 13 at 8 a.m. the defendant ordered the left stocking removed but did not formally order the right stocking removed until May 14, 1979.

The complaint alleged that because of the defendant's negligence the plaintiff suffered an ulceration of her right foot requiring her to undergo subsequent surgery, to incur consequential expenses and to endure pain and suffering. The plaintiff alleged four specifications of negligence. Three of them, which involved claims that the defendant improperly treated the plaintiff because of her history of vascular disease and progressive claudication,[3] are not involved here. The remaining specification, which frames the basis for the issues in this appeal, was to the effect that, although the plaintiff repeatedly complained of pain in her legs, the defendant failed to order the stocking permanently removed from her right foot. That contention was narrowed at trial to the question of whether the defendant was negligent in not removing the stocking from the right foot earlier than midnight of May 12, when it was removed, albeit not on the defendant's order but by a nurse acting on her own. Thus, under this specification the plaintiff sought damages for the pain caused by the negligent failure of the defendant to remove the right stocking earlier.

Three experts testified at the trial. Horace Stansel, a vascular surgeon, testified for the plaintiff and the plaintiff also introduced the defendant's deposition; William F. Quigley, a vascular surgeon, and the defendant testified for the defendant. After instructing the jury that proof of the standard of care required of the defendant and a violation of that standard must be based on the opinion of expert medical witnesses, the court instructed the jury on expert testimony. That por-

---

[3] Progressive or intermittent claudication is a syndrome involving narrowing of the leg arteries. Stedman's Medical Dictionary (24th Ed.)

tion of the charge relating to expert witnesses and hypothetical questions is repeated in full in the footnote.[4] The plaintiff took no exception to any portion of the charge; nor did she file any requests to charge raising the issue of the errors subsequently found in the charge by the trial court. The jury returned a verdict for the defendant. The plaintiff moved to set aside the verdict on the ground that the defendant was negli-

---

[4] "An expert witness is one who through study or experience or both, has acquired skill and knowledge that makes him better qualified than the layman to form an opinion on the subject in question. In this case the experts upon which the parties rely are physicians. Even though these witnesses who were called by both the plaintiff and the defendant testified as experts in their field of knowledge their testimony and opinions are not binding upon you. The weight to be accorded to the testimony of an expert depends upon your conclusion as to the proof of it. And the completeness of the facts considered by him in drawing his conclusions. Of course, you should take into consideration any interest, bias, or prejudice that he may have and all other matters which would affect his credibility, that is, believability upon which I have instructed you at the beginning of this charge. So, if you should find the witness is not credible then it is within your province to reject his testimony. To determine what weight you will accord his testimony you should take into consideration the skill possessed by him, the experience and the knowledge that he has had in the field in which he testified as an expert. And, you may take into consideration whether his experience and training has been long or brief, practical or theoretical, how well qualified he was to give the opinions. And, finally, you must determine whether he has produced before you a rational and reasonable basis in support of the opinion which he ventured. These experts were also asked hypothetical questions.

"A hypothetical question is one wherein the witness is asked to assume that certain matters brought out in evidence before you are true. The value of the opinions given by an expert necessarily depends upon their probability and the completeness of the facts that he was asked to assume as the basis of his opinion. So, your first consideration must be were those facts that the expert was asked to assume proven to you. And, were all the probable facts that were material in arriving at a sound conclusion included in the question or the answer given by the expert. If any facts were included which you do not find to have been proven or any material facts were omitted, the value of the expert's opinion may be entirely destroyed or seriously affected. The opinion may be rejected to the extent that the essential underlying facts have not been proven or considered. Under such circumstances you may conclude that you should entirely disregard the opinion, or that after all there still remains an element of soundness

gent as a matter of law based on the uncontroverted opinion evidence of the plaintiff's and the defendant's medical experts that the defendant deviated from the requisite standard of care by failing to remove the stocking from the right leg prior to midnight of May 12. The court set aside the verdict and rendered judgment ordering a new trial. The basis of the ruling was not that claimed by the plaintiff[5] but was, instead, that the charge was in error in two respects: (1) that it permitted the jury to substitute its own judgment for that of an expert on an issue involving medical expertise; and (2) that it permitted the jury to determine, with-

---

in the opinion which you can take into account. These considerations become particularly important where as in this case different expert witnesses state different conclusions and you have to balance one opinion against the other. So, for example, Doctor Stansel's opinion that the elastic stockings caused the ulcers on the right foot was based in part on the assumption that there was no palpable pedal pulse during the May 1979 hospitalization. Whereas, Doctor Quigley's opinion was based in part on the assumption that there was such a pedal pulse. Indeed, Doctor Quigley indicated his opinion would be different if there was no such pulse palpable to touch. So, in considering that aspect of the testimony of these experts you must consider whether or not there was such a pedal pulse present during May of 1979.

"Another example, Doctor Quigley's assumption that when Doctor D'Angelo in his report of June 13, 1979 which was Exhibit 17, stated that Mrs. Nielson has, and I quote, 'a small S, letter S, scar over the dorsal aspect of the right foot and also the heel. And, that was also noted in the hospital from the elastic stockings only on one evening.' He referred to an S-shaped mark. However, if Doctor D'Angelo had reference to an eschar, spelled E-S-C-H-A-R, Doctor Quigley testified his opinion would have been different. Now, even if you should find that all the facts assumed in the question are proven and that all the material probable facts are included the answers given are in no respect conclusive upon you. They are after all but statements of opinion which it is within your power to accept or reject for you are the ones that must ultimately decide the question. And, in reaching your own conclusions you should consider the opinions in the light of all the testimony which has been offered to you."

[5] The court may set aside the verdict if it concludes that it had, in its charge, committed error which was harmful to the proper disposition of the case. See *Farlow* v. *Andrews Corporation,* 154 Conn. 220, 222–23, 224 A.2d 546 (1966).

out the aid of expert opinion, whether a material fact had been omitted from a hypothetical question asked of an expert.

We are mindful that the "ruling of the trial court on a motion to set aside a verdict is entitled to great weight" because of the court's familiarity with the facts and circumstances of the case. *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982). Reviewing this charge in the light of the evidence produced, however, we must disagree with the trial court's conclusion that the charge was erroneous.

The Supreme Court has often and recently reiterated the "familiar principle" that jury instructions need not be exhaustive or perfect so long as they, considered in their entirety, are legally correct, adapted to the issues, sufficiently clear for the jury's guidance and fairly present the case to the jury without injustice to either party. *State* v. *Storlazzi,* 191 Conn. 453, 464–66, 464 A.2d 829 (1983); *Nash* v. *Hunt,* 166 Conn. 418, 427, 352 A.2d 773 (1974).

The first ground on which the trial court perceived error in its charge was that it permitted the jury to substitute its judgment for that of the experts on an issue involving medical expertise. The portion of the charge claimed as error here is as follows: "Even though these witnesses who were called by both the plaintiff and the defendant testified as experts in their field of knowledge their testimony and opinions are not binding upon you." This sentence, taken in the context of the evidence and the rest of the charge, was perfectly proper.

First, it was immediately followed by instructions indicating that it merely referred to those factors which the jury should use in evaluating the witness' credibility. See footnote 4, supra. Thus, it amounted to neither more nor less than a restatement of the basic rule that " '[t]he jury [is] not obliged to accept the ultimate

opinion of an expert witness. If, for example, they do not find him a credible witness, they will reject his opinion regardless of whether they believe or disbelieve the subordinate facts on which the opinion is based.' " *Nash* v. *Hunt,* supra, 426.

Second, central to this claim of error in the charge is the perception that there was no conflict in the evidence as to whether the defendant was negligent in not removing the stocking from the plaintiff's right leg earlier than midnight of May 12. The trial court determined, and the plaintiff argues on appeal, that the testimony from both the plaintiff's and the defendant's medical expert witnesses was that it was negligence for the defendant to have left the stocking on past 1:20 p.m. on May 12. Thus, the trial court reasoned that the jury either substituted its own judgment for that of the experts or did not find Stansel, the plaintiff's expert, credible. Since, in the trial court's view, the latter alternative was highly improbable because of the congruence of the plaintiff's and the defendant's expert testimony, the court concluded that the jury must have substituted its own judgment for that of the experts. In reviewing a decision on a motion to set aside a verdict the evidence must be considered in the light most favorable to sustaining the verdict. *Sauro* v. *Arena Co.,* 171 Conn. 168, 169, 368 A.2d 58 (1976). Our examination of the evidence, considered in this light, leads us to a different conclusion.

Stansel testified to the effect that it was a violation of the standard of care for the defendant not to have removed the stockings permanently the first time that the plaintiff complained of pain, which would have been sometime on May 10. There was, however, also expert testimony from the defendant and from Quigley, the defendant's expert witness, which is reasonably susceptible of a contrary view.

The defendant testified that the "treatment of choice" for the plaintiff was to do what the defendant had done, including his use of the elastic stockings. He also testified to the effect that he kept the stockings on until he felt the plaintiff's circulation was good, and until she was out of bed and moving around, which would ordinarily be about seven to ten days.

Quigley, on cross-examination by the plaintiff, testified that if he had visited the plaintiff at 1:20 p.m. on May 12 he would have ordered the right stocking removed. While this testimony was sufficient to amount to an expert opinion that the defendant violated the standard of care; see *Snyder v. Pantaleo,* 143 Conn. 290, 294–95, 122 A.2d 21 (1956); *Slimak* v. *Foster,* 106 Conn. 366, 370–71, 138 A. 153 (1927); that is not a necessary reading of it. It falls short of a positive statement that to do otherwise would be a violation of the standard of care. Thus, it was reasonably susceptible of an interpretation by the jury that it was not necessarily a violation of the standard of care to do otherwise. Quigley also testified that after the plaintiff started complaining of pain the stocking should have been left off, but that there was nothing contraindicated to trying it back on and seeing what happened; he further testified that if he felt that the use of the stocking to prevent a thromboembolism outweighed the additional risks, he might try a different size stocking. This testimony must be considered in connection with the defendant's general line of testimony that he used the stockings to prevent an embolism and that at times he cut the stockings so as to loosen their fit.

Thus, this is not a case in which all the expert testimony indicated that there was professional negligence. The testimony of Quigley and the defendant was reasonably susceptible of an interpretation by the jury that the defendant did not violate the standard of care by not requiring removal of the right stocking before

May 12. "[I]t is only in a rare case, for instance, that, as a matter of law, it can be said that the jury are compelled to accept as true the plaintiff's evidence supporting the essential allegations of his complaint, even if it appears such evidence might be uncontradicted. *Silva* v. *Hartford,* 141 Conn. 126, 127–28, 104 A.2d 210 [1954]. The jury were not obliged, for example, to accept the ultimate opinion of the expert witnesses who testified since the jury might reject the opinion if they do not find the expert a credible witness or because the opinion was based on subordinate facts which they do not find proven." *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 358, 294 A.2d 305 (1972). It is clear that this is not such a "rare case."

The second ground of claimed error in the charge is that it permitted the jury to determine on its own, without the aid of expert opinion, "whether a material fact had been omitted from a hypothetical question in a scientific field in violation of the rule of *Van Detti* v. *Parsons Bros., Inc.,* 146 Conn. 282, 286, 150 A.2d 200 [1959]." *Pischitto* v. *Waldron,* 147 Conn. 171, 176, 158 A.2d 168 (1960). We disagree.

We note first that this charge, which the plaintiff described in oral argument as a standard charge, is essentially the same charge which the Supreme Court approved in *Pischitto* v. *Waldron,* supra, and which was recently approved again in *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 296, 465 A.2d 294 (1983). We note also that "a hypothetical question . . . [is] not required to include all of the pertinent facts in evidence." *Donch* v. *Kardos,* 149 Conn. 196, 201, 177 A.2d 801 (1962). It is the function of cross-examination to bring out the probable effect of additional facts on an answer to a hypothetical question, and it is the function of the trier to determine whether those facts have been proven. *Pischitto* v. *Waldron,* supra, 177.

The rule that a jury may not, without the aid of expert opinion, determine whether a material fact was omitted from a hypothetical question in a scientific field derives from *Van Detti* v. *Parsons Bros., Inc.,* supra. In that case, which did not involve a hypothetical question, the claim was made in final argument to the jury as to a possible alternative medical cause for the plaintiff's symptoms for which there was no evidence; the court erroneously reinforced that claim in its charge. Id., 284–85. The Supreme Court held that the charge was erroneous, although harmlessly so, because it permitted the jury to reject an expert opinion on a medical subject based only on its own lay opinion. Id., 286–87. This rule was then expanded to include the rule that the jury may not determine as laymen whether a material fact has been omitted from a hypothetical question in a scientific field. *Pischitto* v. *Waldron,* supra, 176. In *Pischitto,* however, the Supreme Court approved the jury instruction as given because, in the absence of anything in the record indicating the setting of the charge or the expert testimony adduced, the jury could not have reasonably misunderstood the charge to authorize them to determine what scientific facts were material or immaterial to the expert's opinion. Id., 176–78.

Here neither the trial court in its memorandum of decision nor the plaintiff on appeal points to any particular hypothetical question, dealing with the issue of the timing of the removal of the stocking from the plaintiff's right leg, which is claimed to be the basis of jury misunderstanding. We have examined those portions of the trial transcript deemed necessary to the appeal by the parties; see Practice Book § 3012; and, although there were some hypothetical questions dealing with that issue, there was no reference in the charge to any particular hypothetical question from which the jury could have inferred that it had any authority to determine on its own whether a scientific fact was omitted from any such hypothetical question. Cf. *Van Detti*

v. *Parsons Bros., Inc.,* supra. Furthermore, the expert testimony on the issue of the timing of removal of the stocking was such that the jury could well have concluded that the plaintiff had not carried her burden of proof on this issue. Under these circumstances "[t]he charge could not reasonably have been misunderstood by the jury or construed as authorizing them, in a specialized field of knowledge where opinion evidence from a lay witness would be inadmissible, to determine, solely on their own lay knowledge, what scientific facts were material or immaterial to the expert's opinion." *Pischitto* v. *Waldron,* supra, 178.

There is error, the judgment is set aside and the case remanded with direction to render judgment for the defendant.