[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
The plaintiff, SCP Corporation ("SCP") has moved for summary judgment on its claim of liability for breach of contract against the remaining defendant, Bankboston ("bank"), in both of the counts of the operative complaint, which was filed on February 2, 2000. In the first count, the plaintiff alleges that Bankboston contracted to sell it a mortgage after obtaining a judgment of foreclosure but before taking title to the mortgaged premises and that it breached an obligation under that contract to use its best efforts to obtain judgment before March 31, 1993, the date SCP's option to purchase the obligation expired. In the second count, SCP alleges that the same conduct constituted a breach of the CT Page 293 implied covenant of good faith and fair dealing with regard to Bankboston's efforts to obtain judgment during the time period in which SCP wished to exercise the option.
In its brief in opposition, Bankboston has not stated that there are any genuine issues of material fact in dispute; rather, it takes the position, as it does in its own motion for summary judgment on all claims, that as a matter of law its conduct did not constitute a breach of any obligation that it owed SCP under the contract.
Standard of review
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; Sherwood v.Danbury Hospital, 252 Conn. 193, 201 (2000); Alvarez v. New HavenRegister, Inc., 249 Conn. 709, 714 (1999); Rivera v. Double ATransportation, Inc., 248 Conn. 21, 24 (1999); Nichols v. LighthouseRestaurant, Inc., 246 Conn. 156, 163 (1998); Peerless Ins. Co. v.Gonzalez, 241 Conn. 476, 481 (1997).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not CT Page 294 to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Plaintiff's Submissions
SCP has filed in connection with its motion for summary judgment the Sale Assignment Agreement ("Agreement") dated June 16, 1992, on which its breach of contract claims are based. The agreement concerns a mortgage, note, and other obligations related to a development venture known as the "Sursum Corda" project. On the second page of the Agreement, the parties list the obligations they are undertaking. The bank, referred to as the "Assignor" under the Agreement, obligates itself to sell, and the plaintiff, referred to as the "Assignee," obligates itself to purchase "in each case on and as of the Closing Date, all of the Assignor's right, title and interest, in, to, and under [the Sursum Corda loan documents] all upon the terms and conditions set forth herein."
The terms and conditions are set forth in paragraph 1(c): "[t]he purchase price for the Closing (the "Purchase Price") shall be equal to (i) if the Closing Date occurs before December 15, 1992, $2,250,000 and (ii) if the Closing Date occurs on or after December 15, 1992 but on or before March 31, 1993, $3,250,000; provided, that if the closing occurs after the Title Date, the Purchase Price shall be equal to $250,000." (Emphasis in original.)
The Agreement required the plaintiff to pay a deposit of $250,000. The Agreement states that "[t]he Assignee acknowledges and agrees that the Deposit is non-refundable and shall remain the property of the Assignor whether or not the Closing occurs hereunder."
The "Closing Date" is defined at paragraph 1(b) of the Agreement as "that date which is the earlier to occur of (i) March 31, 1993 and (ii) fifteen (15) days following the date (the "Title Date") on which the Assignor acquires fee simple absolute title to the Property, whether pursuant to its foreclosure action or otherwise; provided, however, the Assignee acknowledges and agrees that if the Closing occurs on or after the Title Date, the Closing shall be limited to the sale and assignment of the Assignor's deficiency claims against the Borrower and the Guarantors under the applicable Loan Documents and the Assignee shall have no right, title or interest of any kind whatsoever in or to the Property." (Emphasis in original.)
Paragraph 1(b) of the Agreement ends with the following provision: "If the closing does not occur on or before the earlier of the dates set CT Page 295 forth above, then, except as set forth in Paragraph 18 hereof, all of the rights and obligations of the parties hereto under this Agreement shall terminate immediately without notice or action of any kind whatsoever." The "dates set forth above" are "(i) March 31, 1993 and (ii) fifteen (15) days following the date on which the Assignor acquires [title to the mortgaged property]." Paragraph 18, the exception to the termination provision, provides that the parties will keep the terms of the Agreement confidential.
Paragraph 4 of the Agreement provides in pertinent part:
 In order to induce the Assignee to enter into this Agreement, the assignor agrees and covenants with the Assignee as follows: . . .
 (b) The Assignor will use, to the extent of its legal and contractual ability, best efforts to (i) join Louis Evangelista and LE/SE Corp. as defendants in the Foreclosure Proceedings or any subsequent foreclosure or enforcement actions commenced by the Assignor in connection with the Claims and (ii) cause the "Law Day" of the Obligor in the Foreclosure Proceedings to occur no earlier than December 15, 1992. In addition, the Assignor will also agree to use best efforts to extend such Law Day upon the written request of the Assignee; provided, that in no event and under no circumstances shall such Law Day be extended beyond March 31, 1993. Notwithstanding the foregoing, the Assignee acknowledges and agrees that the requirement of "best efforts" on the part of the Assignor set forth above in this Paragraph 4(b) shall not require the Assignor to violate any applicable laws, statutes or regulations of any governmental authority or expend any amounts of time or money materially in excess of the amounts normally expended in contest matters of this type.
SCP has filed documents from the foreclosure case brought by Bankboston in which the efforts of Bankboston to achieve a judgment of foreclosure are set forth. SCP urges this court to conclude that the activities of Bankboston and the pace of those activities constitute a breach, as a matter of law, of Bankboston's obligation either to use best efforts to obtain a judgment by March 31, 1993, or to conduct itself in a manner consistent with the duty of good faith and fair dealing in that regard. CT Page 296
The bank chose not to proceed under the pending foreclosure action, in which the Melnick/Grae interests had filed special defenses. The Agreement, at paragraph 4(b), set forth above, expressly notes the option of commencing a "subsequent foreclosure action," and this course of action did not therefore, in and of itself, constitute a breach.
The pleadings from the foreclosure file, Bank of Boston Connecticut v.Sursum Corda Properties, Superior Court, judicial district of New Haven at New Haven, Docket No. 92-0335507S, indicate that on October 29, 1992, Evangelista, Sursum Corda Properties, and related interests filed an answer, special defenses and counterclaim, preventing the case from being swiftly resolved by a judgment upon defaults.
SCP takes the position that Bankboston's delay until July 1992 in bringing the new foreclosure action, and its failure to close the pleadings and try to obtain a prompt adjudication of the merits of its claim and the Evangelista/Sursum Corda special defenses and counterclaim by March 31, 1993, constitute a failure to use "best efforts."
SCP has presented two affidavits from a lawyer, Mark Rosen, one with its brief and a supplemental affidavit dated December 14, 2000. In these affidavits, Attorney Rosen states the opinion that the use of best efforts or even good faith efforts, would have resulted in Bankboston being able to get a trial date for a trial on the merits of the foreclosure action, which had been filed in July 1992, and to have the trial completed and the memorandum of decision granting it judgment issued before March 31, 1993. Bankboston has not filed a counteraffidavit, having failed to disclose an expert witness on the issue until November 29, 2000, after its brief was due. The affidavits of Attorney Rosen however, set forth conclusory opinions; and this court is not obliged to accept them nor to be bound by them merely because they are uncontradicted. Pischitto v. Waldron, 147 Conn. 171, 177 (1960);Nixon v. Gniazdowski, 145 Conn. 46, 48 (1958); C. Tait, Handbook of Connecticut Evidence (2d Ed.) § 7.16.6.
Do SCP's Submissions Establish its Cause of Action?
In seeking summary judgment, SCP asks this court to find, as a matter of law, that had "best efforts" been used, or if Bankboston had proceeded in the manner required by an implied covenant of good faith and fair dealing, it would have been able to obtain judgment in the foreclosure action after December 15, 1992, and before the option expired on March 31, 1993, and that it has therefore established a breach of contract.
In assessing whether the facts set forth in SCP's submissions constitute breach of contract as a matter of law, the court must consider CT Page 297 whether judgment would have been obtained in the foreclosure action before March 31, 1993, if the conduct that SCP asserts was necessary to fulfill the contractual obligations had been pursued.
If Bankboston had promptly served the Evangelista interests and closed the pleadings as to their defenses and counterclaim in the fall of 1992, steps that Attorney Rosen characterizes as necessary under either a "best efforts" or "good faith" pursuit of judgment in the foreclosure action, has SCP adduced facts from which this court may find, as a matter of law, that a judgment would have entered in favor of the bank before March 31, 1993? Attorney Rosen's affidavits offer insufficient facts in this regard. He states only that he "believe[s] that the Second Foreclosure action could have been set down for trial in sufficient time to allow for the entry of judgment in accordance with the parties' agreement had the Bank used its best efforts in prosecuting that case. . . ." He avers that "in the 1990's, I filed motions for expedited trials in several foreclosure cases in various Judicial Districts. All were granted." He further states that such motions resulted "either in assignment to a date certain, or inclusion on the next trial list." (Aff. 12/14/00 para. 3). The issue in this case is whether judgment could have been achieved in the Judicial District of New Haven at New Haven between the date of the Agreement and March 31, 1993. Attorney Rosen's affidavit does not set forth the applicable facts with regard to that venue at the relevant time. The pace and volume of foreclosure cases in the various judicial districts may certainly vary from year to year and from location to location, as varying emphasis is placed at different times on reducing the jury and nonjury trial lists. Assignment to a date certain may indeed have been attainable, but the plaintiff has not offered evidence that such a date certain would have been likely to have fallen between December 15, 1992 and March 31, 1993, with sufficient time for a ruling and judgment to have entered before the latter date.
At the time at issue, Practice Book § 259 enumerated eighteen categories of cases that "shall be privileged in respect to assignment for trial." Attorney Rosen's vague and general averments are insufficient to establish that more probably than not, pursuit of the foreclosure action through use of best efforts would have yielded a judgment within the time period sought by the plaintiff.
SCP argues to the effect that it must have been possible to achieve a judgment of foreclosure before March 31, 1993, or Bankboston's promise would have been illusory, and it would unfairly retain the $250,000 payment that was consideration for the promise to use best efforts to obtain a judgment and assign its interest to SCP. As Bankboston points out in its brief, the Sale Assignment Agreement was part of a transaction that also included forbearance from seeking collection from CT Page 298 several guarantors, conditioned upon the execution of the Sale and Assignment Agreement between SCP and Bankboston. A plausible interpretation would be that SCP obtained value from its $250,000 payment in the form of forbearance from collecting the full amount due under guarantees from the entities benefitted by the forbearance agreement. The bank's obligations under the forebearance agreement are expressly conditioned, at paragraph 4(a), on execution of the agreement by which SCP made the $250,000 nonrefundable payment.
Though the materials submitted by SCP in support of its motion for summary judgment are voluminous, they fail to establish that Bankboston failed to take steps in pursuing the foreclosure action that would have resulted in obtaining a judgment before the expiration date of the option. SCP has, therefore, failed to establish that the undisputed facts entitle it to judgment as a matter of law.
Conclusion
The plaintiff's motion for partial summary judgment is denied.
Beverly J. Hodgson Judge of the Superior Court